IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-151-FL

| | | |
|---|---|---|
| KRISTI ELIZABETH RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 22, 24). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court grant plaintiff's motion, deny defendant's motion, and remand for further proceedings. Defendant timely filed an objection to the M&R and the response time has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court declines to adopt the recommendation of the magistrate judge and affirms the decision of the Commissioner.

**BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning June 30, 2006. The applications were denied initially and upon reconsideration. A hearing was held on February 16, 2012, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision

dated April 5, 2012. The appeals council denied plaintiff's request for review on May 13, 2013, and plaintiff filed the instant action on July 16, 2013.

## DISCUSSION

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

2

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was no longer engaged in substantial gainful employment. At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder, generalized anxiety disorder, and attention deficit disorder. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the listings in the regulations. Prior to proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: simple, routine, repetitive tasks with no interaction with the general public and only occasional interaction with co-workers and supervisors; and low stress setting with only occasional decision making and occasional changes in the work setting in a low production rate environment. In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible. At step four, the ALJ concluded plaintiff was not capable of performing her past relevant work. At step five, upon considering

3

testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that plaintiff is capable of performing.

B.  Analysis

Plaintiff argues that the ALJ erred in two respects: (1) the ALJ erred by failing to accord the treating psychiatrist's opinion controlling weight, and (2) the vocational expert's testimony was based upon a legally impermissible hypothetical question. The M&R determined that the first argument warranted remand, and did not reach plaintiff's second argument. Defendant objects to the determination in the M&R that plaintiff's first argument warrants remand. The court, accordingly, addresses plaintiff's arguments de novo.

1.  Treating psychiatrist opinion

On January 10, 2011, plaintiff's treating psychiatrist, Dr. Ash Mikhail, signed a medical source statement rating plaintiff's capabilities. Dr. Mikhail opined that plaintiff suffered from marked or extreme loss in a number of work-related mental activities, including: ability to understand and remember short and simple instructions, ability to understand detailed instructions, carrying out instructions, maintaining attention for lengthy periods of time, working in coordination and proximity to others, making simple work-related decisions, completing a normal work day or week without interruptions from psychological symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 576-77). In addition, he opined that plaintiff can be expected to miss work more than three days every month. (Tr. 576).

The ALJ assigned "little weight" to the opinion of Dr. Mikhail "because the claimant's treatment record does not support that she should be so limited." (Tr. 21) "In fact," the ALJ

4

reasoned, "the record shows that the claimant is stable on medication," referencing "Exhibits 8F and 11F" for this proposition. (Id.).

When making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. See Mastro v. Apfel, 270 F. 3d 171, 178 (4th Cir. 2001). A treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." Id.; see also 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (quoting Craig, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. Id.

Plaintiff argues that substantial evidence did not support the ALJ's determination that plaintiff was "stable on medication" and that the treatment record does not support the limitations described in Dr. Mikhail's opinion. In reviewing whether substantial evidence supports an ALJ's determination, the court must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589). "Ultimately, it is the duty of the administrative law judge reviewing

5

the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

In this case, the ALJ's reasons for giving less weight to Dr. Mikhail's opinion are amply supported by substantial evidence in the record. As discussed in great detail by the ALJ, Dr. Mikhail's treatment notes and clinical records contained in Exhibit 8F and Exhibit 11F of the record provide support for a finding that plaintiff's mental condition is stable with medication, and that limitations beyond that described in the RFC determination are not warranted.

In particular, a number of treatment notes covering the period from February 2008 to April 2011 describe plaintiff's condition while taking medication as stable, euthymic, doing well, or with no problems with anxiety attacks. (Tr. 527, 531-535, 537, 541, 543, 545, 553, 591-94). By contrast, several records state that plaintiff's condition worsened when she was off her medication, (Tr. 566, 588-89), but was stable again after medication (Tr. 565), or that plaintiff was seeking to return to medication. (Tr. 588). This provides "more than a mere scintilla of evidence" supporting the ALJ's findings. Laws, 368 F.2d at 642.

Plaintiff argues that the ALJ's findings as to the stability of her mental condition are undermined by conflicting or contrary evidence in the record showing some instances of increased anxiety, sleeplessness, panic attacks, and mood swings, despite medication. Undoubtedly, conflicting evidence exists in the record regarding the level of stability of plaintiff's condition, and the limitations resulting therefrom. (See, e.g., Tr. 545, 595, 547, 551-52). As noted above, however, it is not the province of the court to "undertake to re-weigh conflicting evidence," Mastro, 270 F.3d

6

at 176, or to make "findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

Rather, it is the ALJ's duty to do so, and to explain how conflicts in the evidence were resolved. In particular, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In this case, the ALJ addressed conflicting evidence in the record in sufficient detail to enable meaningful review of the ALJ's findings of fact.

For example, the ALJ discussed treatment reports in February 2008 describing plaintiff's mood as anxious with a depressed affect, but that mood had improved with medication by April 2008. (Tr. 19-20). The ALJ noted that plaintiff's "anxiety went up after the birth of her daughter," but that notes indicate she was better by August 2009. (Tr. 20). The ALJ noted that plaintiff had experienced increased symptoms in October 2011, but that these followed a period off medication. (Tr. 20). The ALJ recognized continuing difficulties with symptoms in December 2011, but also noted a lapse in medication (Id.). The ALJ also noted testimony by plaintiff and her mother, but considered these in conjunction with additional factors bearing on the extent of plaintiff's limitations, including failure to attend therapy as recommended, evidence regarding daily activities, and prior work history. (Id.).

This discussion sufficiently explains how conflicts in the evidence were resolved to arrive at the ALJ's RFC determination.[1] Accordingly, remand for the purposes of further analysis or explanation of the conflicting evidence in the record is not warranted.

---

[1] It is in this respect, in particular, that the court departs from the analysis in the M&R, which determined contrary to the discussion in the ALJ opinion that "[t]he ALJ made no mention of Claimant's on-again, off-again pattern of symptoms in finding Claimant's condition to be 'stabilized.'" (M&R at 12). Indeed, as noted above, the ALJ did in fact make mention of plaintiff's variations in symptoms in finding plaintiff's condition to be stable with medication.

2.	Hypothetical Question

The ALJ's posed the following hypothetical question to the vocational expert at hearing in this matter:

> Please assume a hypothetical individual of the claimant's age, education, and work background, who has no exertional limitations. Non-exertionally, the individual is limited to simple, routine, repetitive tasks, with no interaction with the general public, and only occasional interaction with co-workers and supervisors. The job should be in a low stress setting, defined as having only occasional decision-making, and occasional changes in the work setting. The job should be in a low production rate environment. Could such a hypothetical individual perform the past work of this claimant? . . . . Would there be other jobs performable in the labor market?

(Tr. 60). The vocational expert answered in the affirmative as to the latter question. (Id.). Plaintiff contends this question was insufficient because it failed to include the marked limitations in areas such as maintaining attention and concentration, interruptions, performing at a consistent pace, responding to criticism from supervisors, and getting along with co-workers, all as set out in the opinion of Dr. Mikhail.

A hypothetical question, however, is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. See Johnson, 434 F.3d at 659 (determining hypothetical question was valid where it adequately reflected plaintiff's RFC as determined by the ALJ from substantial evidence in the record). Here, the hypothetical question in this case tracked plaintiff's limitations as set out in the ALJ's RFC determination, which was supported by substantial evidence in the record.

In particular, in addition to the evidence noted above for giving little weight to the opinion of Dr. Mikhail, substantial evidence supported the ALJ's determination that plaintiff was capable of doing simple, routine tasks, in a low stress setting, with occasional interaction with coworkers and occasional decision making. For instance, Dr. Strobel-Nuss and Dr. Herrera stated plaintiff is capable of performing simple, routine tasks (Tr. 490, 508); plaintiff was able to work until 2011 (Tr.

39, 289-290, 454); plaintiff was capable of driving herself (Tr. 51, 419, 422); and plaintiff provides some care for her children (Tr. 57). Substantial evidence in the record therefore supports the ALJ's RFC determination. Accordingly, the ALJ did not err by failing to include in the hypothetical question the marked limitations noted in Dr. Mikhail's opinion.

## CONCLUSION

Based on the foregoing, upon *de novo* review of the arguments raised, and upon considered review of the record, the court declines to adopt the recommendation of the magistrate judge, DENIES plaintiff's motion for judgment on the pleadings (DE 22), GRANTS defendant's motion for judgment on the pleadings (DE 24), and AFFIRMS the final decision by defendant. The clerk is directed to close this case.

SO ORDERED, this the 22nd day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge